BROCK et al. *versus* COOK et al.

QUESTION IN THIS CASE.

*As to parol contracts for the sale of lands.*

1. A parol contract for the sale of lands, accompanied with possession, improvements by the vendee, uninterrupted occupancy, and frequent acts recognising the sale, by the vendor, will take such contract out of the statute of frauds; and authorise Chancery to decree a specific performance.

This was a bill in Chancery, filed in Madison Circuit Court, against the plaintiffs in error, the administratrix and heirs of the estate of Reuben Brock, deceased. The bill shewed, that the said Reuben Brock, in his life-time, being seized of certain lands, made sale thereof, to one Sadler. That, Sadler took possession and made improvements, and afterwards, sold off, to sundry persons, portions of said land.— That, subsequently, the remainder of the land was sold, by Sadler and his sons, who were concerned as a mercantile firm, to one Fenwick, in trust under whose sale the land became the property of the complainants.

Notwithstanding the denial of the allegations of the bill, by the answer of the defendants, the testimony established most of the facts there set forth— particularly the sale to Sadler, the payment of the consideration money by him, and his occupancy and improvements.

The Chancellor below, on a final hearing, rendered a decree in favor of the complainants; and, by writ of error, the cause was removed here.

Argued by *Mr. Craighead*, for the plaintiffs in error; and by *Mr. Thornton*, for the defendants.

COLLIER, J. — The defendants in error filed their bill in the Circuit Court of Madison, in May, 1828, for the specific performance of a contract for the sale and conveyance of lands. In their bill, they set forth, that in the year 1815, or perhaps earlier, the husband of the plaintiff in error, (Elizabeth,) sold to Isaac Sadler and Sons, the land in question, and delivered to them, the possession thereof, and received from them, payment of the entire purchase money. That Messrs Sadler & Sons made improvements, in clearing land and building houses. It is further alleged, that the land had been conveyed in trust, for the payment of debts; and, under a power of sale, in the deed, had been sold by the trustee, and purchased by Ezra Patch and the defendant in error, (Henry Cook;) that Ezra Patch had sold his interest in the land, to the defendants in error, (Rodah Horton,) and Wm. M. Wofford. The deeds from Sadler & Sons to their trustee, from the trustee to Patch and Cook, and from Patch to Horton and Wofford, accompany the bill, as exhibts, and appear to have been regularly proven, or acknowledged and recorded.

The plaintiff in error, Elizabeth, denies every allegation in the bill—not positively, however, but argumentatively—and insists upon the statute of frauds, and every statute of limitations which may be thought available. The other plaintiffs in error disclaim all knowledge of the matters, and refer to the answer of Elizabeth; and insist that the allegations of the bill shall be made good, by proof.

3 v. P.                    59

BROCK, et al. *vs.* COOK, et al.

The bill is fully sustained by the depositions in the cause : not only such portions of the bill as are here recited, are proved, but two of the witnesses state, that a deed was actually made and executed, to Messrs Sadler & Sons, or some one of them, at the time of the purchase, according to their recollection. Further, it appears, that Sadler & Sons had sold portions of the land to different persons, and incumbered it, with the knowledge, and without the dissent of their seller. And, lastly, that the vendor had purchased of them, and paid for, (*at least partially,*) a small portion of it.

The question, presented for our consideration, is, whether the facts of this case, take it out of the statute of frauds. In the great contrariety of decision, as to what circumstances will relieve a parol agreement, for the sale of lands, from the operation of the statute of frauds, it would be difficult, (if not improper,) to prescribe rules, to guide us, in the determination of cases, (unlike the present, in their facts,) which may hereafter arise. We shall, therefore, be content to inquire, whether the proofs, in this case, do not entitle the defendants in error, to a specific performance.

In some of the English decisions, (and, perhaps, in American, also,) it has been decided, that a part payment of the purchase money, upon the footing of a parol agreement, took a case without the statute of frauds.[a] While, in other cases, it has been held, to be competent for the vendor to avail himself of the statute, though he has received a part of the purchase money.[b]

The former class of cases, are founded upon the principle, that equity will not allow a statute, in-

[a] 1 Vern 472; 3 Atk. 1; 4 Ves. 720.

[b] Pre. in C. 560 ; 2 Eq. ca. ab. 46; Lefroy, 22

tended to suppress fraud, to become the instrument
of its perpetration: and, as it would be a fraud, in
the seller, after having received the purchase money,
to disclaim the contract, he should be refused aid.
In the latter class, it is maintained, that to allow
such equivocal acts, of *part performance*, to put aside
the statute, would be productive of all the danger
which the statute proposed to avoid: hence, it was
safer to refuse the removal of the inhibition imposed
upon parol agreements, unless some act had been
done, which tells, in itself, that a sale has been made.

In *Allen* vs *Booker*,[a] the question, as to the effect [a]2 Stew.21
of a payment of part of the purchase money, upon
a parol agreement, came directly before the Court,
and it was determined that such payment did not
take the case out of the statute.

In *Davenport* vs. *Mason*,[b] the purchaser received [b]15Mass85
possession, and it was decided, that a parol agreement
for the sale of lands, is not absolutely void, by the
statute of frauds; but, if any act has been done, in
part execution of the contract, which would not have
been done, but on account thereof—which was done,
with a view to the agreement, and which is preju-
dicial to the party doing it, the parties are not per-
mitted to treat the agreement as a nullity. Similar,
in principle, are the cases of *Ricker et al* vs. *Kelly*
*et al.*[c]—*Parkhurst et al.* vs. *Van Cortlandt*[d]— *Downey* [c]1 Greenl'f, 117
vs. *Hotchkiss.*[e]                                          [d]14John.15
In *Wetmore* vs. *White et al,*[f] it was held, that the [e]2Day's C. 225
payment of the consideration money. possession, and [f]2 Caine's Ca. in Er.
making improvements take a case out of the statute 87
of frauds, and will entitle to a decree, for a specific
performance.

In all the States of the Union, with the exception

of Kentucky and, perhaps; Tennessee,[a] it has been determined, that a parol agreement, for the sale of lands, is not absolutely void ; but may be enforced in equity, if there have been acts of performance, so definite and unequivocal, as to furnish, in themselves, convincing proof, that an agreement had been made.

If it could be ascertained, what were the settled course of decision, when our statute, against frauds and perjuries was enacted, it would be our duty to follow it.    In enacting the provision we are considering, our legislature have copied almost *verbatim*, from the statutes of the States and of England, on this subject.    In adopting the statute, we must be understood to have adopted, with it, the decisions of the English and American Courts—they, so far as then published, being supposed to be in the contemplation of the legislature —See *Allen* vs. *Booker*, and *Downey* vs. *Hotchkiss*, (before referred to.)

But, it is a task almost impracticable, to adduce from the mass of varying decision, any settled rules; nor do we consider it necessary, in this case, to attempt it, as the decisions which adhere most closely to the statute, save those we have already excepted, recognise a case such as this, as not coming within its provisions.    For, let it be remembered, that here, there appears a sale, delivery of possession, improvements made, uninterrupted occupancy for twelve or fifteen years, and a repeated recognition, by the seller, both by words and acts, of the right of his vendee.    We lay no stress on a purchase of a small

---

[a] 1 Bibb, 204. 5  6, 564; 3 ib. 2 ; 4 ib. 58;  1 Marshall. 553;  3 ib. 445; M'Clure -v Potter, in the Supreme Court of Tennessee, and cited in Allen v Booker, 2 Stewart, 21.

part, made by the seller from his vendee; for, though proved, it is not stated in the bill.

We may add our regret, to that which has been so often expressed by others, that the letter of the statute should ever have been departed from. But, with Lord *Kenyon*, we disclaim the power of legislation; and, with him, are content to move *super antiquas vias*, and to administer the law, as we may ascertain it, by our industry and research.

In regard to the statutes of limitations, insisted on, in the answer of Elizabeth Brock, it is entirely enough to say, that there are none which are available for her.

Let the decree be affirmed.

HOPKINS, J., having been of counsel below, did not sit.